**Albert H. BALENTINE, Wallace Young, Virginia Young, Allen Lee Dunbar, Ethel Lee Dunbar Tomiesene Johnson, Karen Young, and Ernestine Marshall, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**UNION MORTGAGE COMPANY, Skopbank, Five Avco Financial Services, Inc., Security Pacific Financial Services, Inc., Fleet Finance, Inc., and American General Finance, Inc., Defendants.**

No. 91 C 8213.

United States District Court,
N.D. Illinois, E.D.

June 30, 1992.

Daniel A. Edelman, Cathleen M. Combs, Francine Schwartz, Tara Goodwin Redmond, Law Offices of Daniel A. Edelman, Chicago, Ill., for plaintiffs.

Lawrence X. Pusateri, Jonathan N. Ledsky, Craig Allen Varga, Peterson & Ross, Chicago, Ill., for Union Mortg. Co.

Steven M. Levy, Sonnenschein, Nath & Rosenthal, Chicago, Ill., Robert J. Sisk, Jeff H. Galloway, Vilia B. Hayes, Hughes, Hubbard & Reed, New York City, for Skopbank.

Theodore Robert Tetzlaff, Richard P. Steinken, Daniel S. Goldman, Avidan Joel Stern, Jenner & Block, Chicago, Ill., for Five Avco Financial Services, Inc., Security Pacific Financial Services, Inc. and Fleet Finance, Inc.

John P. Scotellaro, Peter G. Rush, Bell, Boyd & Lloyd, Chicago, Ill., for American General Finance, Inc.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

Named plaintiffs Albert H. Balentine, Wallace Young, Virginia Young, Allen Lee Dunbar, Ethel Lee Dunbar, Tomiesene Johnson, Karen Young, and Ernestine Marshall brought this class action lawsuit in the Circuit Court of Cook County to secure redress for the allegedly unfair and deceptive practices of defendants. Plaintiffs complain that defendant Union Mortgage Company ("Union") induced consumers to enter into home improvement contracts and failed to comply with the statutory requirement that a consumer be provided three days in which to cancel such a contract. Plaintiffs allege that Union's practices effectively bound consumers to the home improvement contracts before the final financing terms had been disclosed. Union is a wholly-owned subsidiary of defendant Skopbank, and plaintiffs allege that Skopbank controlled the Union practices of which they complain. The remaining de-

fendants allegedly purchased the consumer credit contracts which were secured through Union's allegedly deceptive practices.

On December 20, 1991, Skopbank removed the action to this Court pursuant to 28 U.S.C. § 1441(d), which permits removal by a defendant who qualifies as a "foreign state" under 28 U.S.C. § 1603(a). Skopbank maintains that it is a "foreign state" because it "is controlled, and the majority of its shares or other ownership interest is owned by, the National Central Bank of the Republic of Finland, the Bank of Finland, a political subdivision of the Republic of Finland." (Notice of Removal ¶ 4.) On February 4, 1991, plaintiffs moved to remand this action to state court, contending that Skopbank did not qualify as a "foreign state" at the time of the filing of their complaint. Moreover, plaintiffs maintain that because the Bank of Finland's control of Skopbank is only temporary, the Court should refuse to exercise jurisdiction and should instead permit the action to proceed in state court. For the reasons set forth below, the Court finds that Skopbank qualifies as a "foreign state" and accordingly denies plaintiffs' motion to remand.

### II. FACTS

Because the central issue raised by plaintiffs' motion is when Skopbank became a "foreign state" for purposes of § 1603(a), the Court describes the facts relevant to that determination. Defendant Skopbank is a banking corporation which is organized and exists under the laws of the Republic of Finland, with its principal place of business in Helsinki, Finland. (Aff. of Carl–Fredrik Londen ¶ 2.)[1] Prior to September 19, 1991, a majority of Skopbank's stock was owned by the savings banks of Finland, for which Skopbank acted as the central bank and lender of last resort. (*Id.* at ¶ 3.) The remainder of Skopbank's shares were owned by individuals in Finland. (*Id.*) On September 19, 1991, the Bank of Finland, a governmental institution controlled by the Finnish Parliament, announced that

---

1. Londen is the Chief Legal Counsel of Skopbank's International Department. (*Id.* at ¶ 1.)

it would be taking control of Skopbank in cooperation with the Finnish Banking Supervision Office (the "BSO"). (*Id.* at ¶ 4 & Exs. A, B & C; *see also* Aff. of Pekka Laajanen ¶¶ 2–3.)[2] In connection with this announcement, the Chairman of Skopbank's Board of Management, its Chief General Manager, and its Deputy Managing Director all resigned their positions. (Londen Aff. ¶ 4 & Ex. B.) On September 20, 1991, the BSO appointed a supervisor to monitor the operations of Skopbank, and the Finnish Parliament's banking committee confirmed the takeover of Skopbank by Finland's national bank. (*Id.* at ¶ 5.) Acting at the direction of the Bank of Finland and the BSO, Skopbank's Supervisory Board on September 30, 1991, appointed Kaarlo Jannari, formerly of the Bank of Finland, to the position of Chairman of the Board of Management and Chief General Manager of Skopbank. (*Id.* at ¶ 6; Laajanen Aff. ¶ 7.)

On October 14, 1991, Skopbank's shareholders approved a capital increase as well as the establishment of a new category of Skopbank's stock, which would be subscribed by the Bank of Finland or its wholly-owned subsidiaries. (Londen Aff. ¶ 8.) Moreover, the shareholders also approved a proposal which reduced the number of members seated on Skopbank's Supervisory Board and which allowed the Bank of Finland to appoint a majority of the members of that Board. (*Id.* at ¶ 8 & Ex. E; Laajanen Aff. ¶ 9.) On November 12, 1991, the Bank of Finland, through Scopulus Oy, its wholly-owned Finnish subsidiary, fully subscribed to the Skopbank equity issue, thereby providing the Bank with 52.91 percent of Skopbank's shares and 63.59 percent of its total voting rights. (Londen Aff. ¶ 9; Laajanen Aff. ¶ 6.) Although it is the Bank of Finland's intention ultimately to divest Skopbank once its operations have been stabilized, the Bank has not yet identified a prospective purchaser for Skopbank. (*Id.* at ¶ 10.)

Plaintiffs filed their complaint in the Circuit Court of Cook County on October 11, 1991. Skopbank was served with process on November 21, 1991. On December 20, 1991, Skopbank removed the action to this Court pursuant to 28 U.S.C. § 1441(d).

## III. ANALYSIS

■ Section 1441(d) provides that "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." Section 1603(a) defines a "foreign state" as "a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Subsection (b) then defines an "agency or instrumentality of a foreign state" as an entity:

(1) which is a separate legal person, corporate or otherwise; and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof; and

(3) which is neither a citizen of a state of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

In contesting the appropriateness of Skopbank's removal petition, plaintiffs maintain that pursuant to § 1603(b)(2), the Bank of Finland did not own a majority of Skopbank's shares when the instant action was filed and that, therefore, Skopbank does not qualify as a "foreign state" entitled to remove the action under § 1441(d).[3] Skopbank responds that although the Bank of Finland did not acquire a majority of Skopbank's stock until after plaintiffs filed the instant action, the Bank acquired equitable majority ownership on September 19, 1991, when it took control of Skop-

---

**2.** Laajanen is Deputy Director General of Finland's Ministry of Finance. (Laajanen Aff. ¶ 1.)

**3.** Plaintiffs do not contest that the Bank of Finland currently owns a majority of Skopbank's shares and that Skopbank currently qualifies as a "foreign state" under § 1603(a).

bank's operations. Skopbank maintains that the Bank had an "other ownership interest" under the terms of the statute, despite the fact that it did not yet own a majority of Skopbank's shares. Moreover, Skopbank also argues that even if it was not yet a "foreign state" when the action was filed, it became a "foreign state" shortly thereafter, thereby entitling it to removal pursuant to § 1441(d). The Court agrees with Skopbank that it qualified as a "foreign state" at the time this lawsuit was filed.

The affidavits presented by Skopbank show that the Bank of Finland, a governmental institution of the Republic of Finland, essentially took control of Skopbank on September 19, 1991. On that date, the Bank and the BSO began a series of steps which would formalize the nationalization of Skopbank. For example, three of Skopbank's officers resigned, and shortly thereafter, an official of the Bank of Finland was appointed as Chairman of Skopbank's Board of Management and its Chief General Manager. (Londen Aff. ¶¶ 4, 6 & Ex. B; Laajanen Aff. ¶ 7.) Moreover, at a special shareholders meeting on October 14, 1991, the shareholders approved the establishment of a new category of shares that would be subscribed by the Bank in order to give it majority control of Skopbank's stock. (Londen Aff. ¶¶ 8–9.) At the same meeting, the shareholders approved measures relating to the composition of Skopbank's Supervisory Board that would enable the Bank to appoint a majority of the members of that Board. (Londen Aff. ¶ 8 & Ex. E; Laajanen Aff. ¶ 9.) Thus, it is clear that the Bank of Finland was controlling the operations of Skopbank as of September 19, 1991, although the steps necessary for the acquisition of a majority of Skopbank's shares were not completed until November 12, 1991. Accordingly, the

Bank of Finland obtained its "other ownership interest" in Skopbank before this lawsuit was initiated, making Skopbank a "foreign state" under § 1603(a). As a result, Skopbank was entitled to remove the action pursuant to § 1441(d).

The Court's conclusion is consistent with that reached earlier this year by a federal court in Alabama. *See Murray v. Union Mortgage Co.*, No. 91–0799–RV–M, slip op. (S.D.Ala. Jan. 14, 1992). The *Murray* court similarly was required to determine whether Skopbank qualified as a "foreign state" entitled to remove an action pursuant to § 1441(d). The *Murray* case was filed on September 11, 1991, and was removed by Skopbank to federal court on September 27. The court found that the Bank of Finland had "assumed majority control over Skopbank" on September 19, 1991. *Id.* at 1. Accordingly, the court concluded that Skopbank qualified as a "foreign state" under § 1603(a) and was entitled to remove the action pursuant to § 1441(d). *Id.* at 3.[4] This Court agrees with the conclusion of the *Murray* court that Skopbank was a "foreign state" as of September 19, 1991. Thus, its removal of this action pursuant to § 1441(d) was proper.

Finally, plaintiffs contend that even if removal was proper based upon Skopbank's status as a "foreign state," the Court should refuse to exercise jurisdiction because the control of Skopbank by the Bank of Finland is only temporary. Plaintiffs maintain that the Bank of Finland intends merely to restore Skopbank to a position of financial stability and then to sell the bank to a private purchaser, at which time Skopbank presumably would cease to be a "foreign state" under § 1603(a). In anticipation of this eventuality, plaintiffs request that the Court decline

---

**4.** Because the *Murray* case was filed before September 19, 1991 and the plaintiffs' cause of action certainly arose prior to that time, the court implicitly rejected the plaintiffs' argument that Skopbank was not entitled to remove the action because it was not a "foreign state" when the cause of action arose. *See id.* at 2. In the instant case, plaintiffs have focused on Skopbank's status at the time of the filing of their complaint, as opposed to when the cause of action arose. Because the Court has determined that Skopbank was a "foreign state" under § 1603(a) as of September 19, 1991, it need not consider whether the time of filing, the time of service of process, or the time of removal should be utilized in determining the status of the removing entity.

to exercise jurisdiction and allow the case to proceed in state court. Although the Bank of Finland apparently intends to divest Skopbank once its operations have been stabilized (*see* Londen Aff. ¶ 10), there is no indication when that may occur. A possible purchaser for Skopbank has not been identified. (*Id.*) Under these circumstances, the Court is not at liberty to decline to exercise its jurisdiction. *See In re Delta America Re Insurance Co.*, 900 F.2d 890, 893 (6th Cir.1990) (§ 1441(d) "provided an absolute right of removal to the federal courts by the foreign state"), *cert. denied,* —— U.S. ——, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). The policy arguments raised by plaintiffs with respect to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, are simply irrelevant once the Court has concluded that Skopbank qualifies as a "foreign state" under § 1603(a). Accordingly, removal was proper, and the case must proceed in this Court, with trial by the Court without a jury. *See* 28 U.S.C. § 1441(d).[5]

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is denied. The parties are directed to appear at a status hearing on July 8, 1992 at 9:30 a.m.

---

**5.** Although the parties did not raise the issue on the present motion to remand, there has been some debate over whether, pursuant to § 1441(d), the entire action should be removed to federal court, or only the claims alleged against the foreign state itself. Those Courts of Appeals which have considered the question have concluded that the entire action should be removed to federal court. *See, e.g., Nolan v.* *Boeing Co.*, 919 F.2d 1058, 1064–66 (5th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); *Chuidian v. Philippine National Bank*, 912 F.2d 1095, 1098–99 (9th Cir. 1990). This Court agrees with those decisions and will therefore exercise jurisdiction over plaintiffs' claims against defendants other than Skopbank.